UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAWRENCE C., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C20-734-MLP <br><br> ORDER |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in discounting his own allegations and the opinions of examining psychologist David Widlan, Ph.D. (Dkt. # 19 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.   BACKGROUND

Plaintiff was born in 1986, has a high school diploma and some college education, and has worked as a janitor and security guard. AR at 37, 230. Plaintiff was last gainfully employed in 2017. *Id.* at 203, 213.

ORDER - 1

In March 2018, Plaintiff applied for benefits, alleging disability as of March 1, 2016.[1] AR at 188-200. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 116-19, 123-38. After the ALJ conducted a hearing in April 2019 (*id.* at 32-53), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 15-27.

Utilizing the five-step disability evaluation process,[2] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

Step two: Plaintiff has the following severe impairments: attention deficit hyperactivity disorder not otherwise specified ("NOS"), cognitive disorder NOS v. borderline intellectual functioning, major depressive disorder, and personality disorder NOS.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[3]

Residual Functional Capacity: Plaintiff can perform a full range of work at all exertional levels, with the following non-exertional limitations: he is limited to simple, routine tasks. He cannot interact with the general public, and can have only brief interaction with co-workers but no tandem or cooperative work. He can accept instructions from supervisors.

Step four: Plaintiff can perform past relevant work as an industrial cleaner.

Step five: In the alternative, there are also other jobs that exist in significant numbers in the national economy that Plaintiff can perform, and Plaintiff is therefore not disabled.

AR at 15-27.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

---

[1] At the administrative hearing, Plaintiff amended his alleged onset date to January 30, 2018. AR at 36.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV. DISCUSSION

**A.    The ALJ Did Not Harmfully Err in Discounting Plaintiff's Subjective Allegations**

The ALJ summarized Plaintiff's subjective allegations and explained that he discounted them[4] because his allegations were inconsistent with the objective medical evidence, which

---

[4] Although the Commissioner suggests that the ALJ did not discount Plaintiff's allegations (dkt. # 20 at 3-4), the ALJ's decision explicitly states that he found Plaintiff's allegations to be "not entirely consistent

indicated that Plaintiff's symptoms improved with treatment when compliant with medication, and that the remaining limitations were not disabling. AR at 20-25. Plaintiff argues that the ALJ failed to provide a clear and convincing reason to discount Plaintiff's allegations, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

First, Plaintiff argues that the ALJ erred in emphasizing that he stopped taking his medication before his hospitalization, because he should not be penalized for lacking insight into his need for medication. (Dkt. # 19 at 10.) Plaintiff here misses the ALJ's point: the ALJ noted that Plaintiff's symptoms improved when he took medication, and, conversely, worsened when he stopped taking medication. AR at 23-24. This is a valid reason to discount Plaintiff's allegations of disabling mental limitations. *See, e.g.*, *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.").

Plaintiff also argues that the ALJ erred in finding that his claim of disability was undermined by his statements indicating a desire to work, because his own desire to work does not establish that he could in fact work. *See* AR at 24 (citing *id.* at 373, 402). The record contains statements indicating that Plaintiff told his providers he intended to get a job, hoped to get a job to supplement his income after receiving benefits, and was starting a vocational training program. *Id.* at 373-74, 402. Plaintiff's providers also encouraged him to work or look for work. *See, e.g.*, *id.* at 392, 445, 449, 459. But even if this line of reasoning does not rise to the level of clear and convincing, any error would be harmless in light of the ALJ's other independent, valid reasons to discount Plaintiff's statements. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533

---

with the medical evidence and other evidence in the record[.]" AR at 21. The ALJ's decision devotes multiple pages to contrasting Plaintiff's allegations with the evidence in the record, and the ALJ concludes that the record "does not support limitations to the extent alleged." *Id.* at 25. The Commissioner's argument does not reflect an accurate characterization of the ALJ's decision.

ORDER - 4

F.3d 1155, 1162-63 (9th Cir. 2008).

Plaintiff goes on to argue that the ALJ erred in finding that the medical evidence was inconsistent with Plaintiff's allegations because Dr. Widlan's examination reports corroborate his allegations and some of the mental status examinations do as well. (Dkt. # 19 at 10-11.) But the record also contains the evidence cited and referred to by the ALJ, which indicates largely normal objective findings when compliant with medication. *See* AR at 21-23; *see also id*. at 346-47, 362, 364, 367, 380-81, 384-85, 402, 413, 420, 424, 433, 497. The ALJ acknowledged that the record indicates that Plaintiff has some mental limitations, but the ALJ did not err in finding that the record shows that Plaintiff's limitations are less severe than alleged. *Id*. at 25 ("While [Plaintiff] does have some mental issues, the objective medical record for the adjudicative period does not support limitations to the extent alleged.").

Lastly, Plaintiff challenges the ALJ's reasoning to the extent that he found that Plaintiff's "range of activities" was inconsistent with his allegations, without specifying which activities contradicted which allegations. *See* AR at 21. The Court agrees that this line of reasoning is not sufficiently specific, but finds this error to be harmless in light of the other valid, independent reasons the ALJ provided for discounting Plaintiff's allegations. *See Carmickle*, 533 F.3d at 1162-63.

Because the ALJ provided legally sufficient reasons to discount Plaintiff's allegations, the Court affirms this portion of the ALJ's decision.

**B.     The ALJ Did Not Harmfully Err in Discounting Dr. Widlan's Opinions**

Dr. Widlan examined Plaintiff twice, in February 2018 and in August 2018. In February 2018, Dr. Widlan completed a DSHS form opinion after reviewing no records, describing Plaintiff's symptoms and many marked and severe functional limitations and indicating that

ORDER - 5

these limitations would persist 6-12 months. AR at 309-18. In August 2018, Dr. Widlan wrote a narrative report describing Plaintiff's symptoms and many disabling limitations. *Id*. at 355-59. The ALJ found both of Dr. Widlan's opinions to be less persuasive, and Plaintiff assigns error to that finding. *See id*. at 25.

1.   *Legal Standards*

Because Plaintiff applied for benefits after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence. Under the regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[5] The ALJ must articulate and explain the persuasiveness of an opinion or prior finding based on "supportability" and "consistency," the two most important factors in the evaluation. *Id*. at (a), (b)(1)-(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" with evidence from other sources, the more persuasive a medical opinion or prior finding. *Id*. at (c)(1)-(2). The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements. *Id*. at (b)(2), (c)(3)-(5). *But see id*. at (b)(3) (where finding two or more opinions/findings about same issue equally supported and consistent with the record, but not exactly the same, ALJ will articulate how other factors were considered). Where a single

---

[5] "A prior administrative medical finding is a finding, other than the ultimate determination about [disability], about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review . . . in [a] claim based on their review of the evidence in your case record[.]" 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).

ORDER - 6

medical source provides multiple opinions or findings, the ALJ conducts a single analysis and need not articulate how each opinion or finding is considered individually. *Id*. at (b)(1).

### 2. *Lack of Familiarity with the Longitudinal Record*

The ALJ noted that Dr. Widlan's opinions were not informed by familiarity with the entire record but were instead based on two examinations with minimal records review. AR at 25. The ALJ found that the record showed largely normal mental status examinations with treating providers, and only limited, conservative treatment for Plaintiff's mental conditions. *Id*. The ALJ also noted that the State agency consultants had the opportunity to review more records than Dr. Widlan (including both of Dr. Widlan's opinions), and the ALJ therefore found their opinions to be more persuasive and consistent with the record as a whole. *Id*.

Dr. Widlan's limited familiarity with Plaintiff's longitudinal record adequately explains why his opinions are less persuasive, and would also constitute a specific, legitimate reason to discount his opinions under the old regulations as well. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Although Plaintiff suggests that it is logically inconsistent to find Dr. Widlan's opinions less persuasive because he only performed examinations and yet find more persuasive the opinions of consultants who never examined Plaintiff (dkt. # 19 at 6), this misses the ALJ's point: the ALJ was concerned with not the frequency of examination, but the degree of familiarity with the longitudinal record. Because Dr. Widlan did not have access to most of the records, and his opinions were inconsistent with those records, the ALJ reasonably found his opinions to be less persuasive. Plaintiff has not shown that this finding was unreasonable or unsupported by substantial evidence, and therefore has failed to establish error in the ALJ's assessment of Dr. Widlan's opinions.

//

### 3. *Reliance on Self-Report*

Plaintiff notes that the ALJ also stated that Dr. Widlan relied on Plaintiff's subjective self-reporting and failed to provide "sufficient evidence of objective, clinical findings to support the degree of disabling severity opined." AR at 25. Plaintiff points to the symptom inventories that he completed and his answers to interview questions (dkt. # 19 at 7), but these responses constitute self-report and thus do not undermine the ALJ's interpretation. *See* AR at 316-18, 357-58. The IQ testing does constitute objective evidence but does not necessarily correlate to some of the functional limitations Dr. Widlan described. *See id*. at 311 (describing severe communication limitations), 359 (describing disabling social limitations). Likewise, abnormal affect does not necessarily correspond to any particular functional limitation. *See id*. at 357 (describing Plaintiff as exhibiting apathy, lethargy and a flattened affect). Plaintiff has not shown that the ALJ erred in finding that Dr. Widlan relied on Plaintiff's subjective reporting to some degree in rendering his opinions. Because, as explained *supra*, the ALJ properly discounted Plaintiff's subjective reporting, Dr. Widlan's reliance on that reporting reasonably suggests that his opinions are less persuasive due to lack of objective support.[6]

### 4. *Mental Status Examinations*

Lastly, Plaintiff argues that the ALJ erred in finding Dr. Widlan's opinions to be inconsistent with the record because the record actually contains many abnormal mental status examination findings. (Dkt. # 19 at 7-8.) Plaintiff indeed points to some abnormal findings in mental status examinations performed by treating providers (dkt. # 19 at 8 (citing AR at 346,

---

[6] Under cases relying on the old regulations, this reasoning would have constituted a specific, legitimate basis to discount Dr. Widlan's opinions as well. *See, e.g.*, *Bray*, 554 F.3d at 1228 ("As the district court noted, however, the treating physician's prescribed work restrictions were based on Bray's subjective characterization of her symptoms. As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements.").

ORDER - 8

352, 381, 384, 442, 445, 449, 459, 464, 467, 472, 481, 492, 507-08)), but some of these findings pertain to eye contact, hygiene, or self-reported mood, which do not necessarily correspond to any particular functional limitation. The record does contain some abnormal findings as to thought process and/or speech, although some of these findings are internally inconsistent or suggest Plaintiff presented both normally and abnormally during the examination, and one pertains to a time when Plaintiff was not taking medications consistently. *See, e.g.*, AR at 352 (indicating conflicting findings in multiple categories), 442 (listing some abnormal findings yet concluding "no impairments noted"), 445 (same), 449 (same), 456 (same), 459 (same), 464 (describing hygiene problems and slow, monotone speech, with logical thought process), 467 (listing some abnormal findings yet concluding "no impairments noted"), 481, 492, 507-08 (Plaintiff had not been taking medication consistently). The record also contains many normal or mostly normal mental status examinations, as well. *Id*. at 346-47, 362, 364, 367, 380-81, 384-85, 402, 413, 420, 424, 433, 497. Accordingly, substantial evidence supports the ALJ's finding that the treatment record was inconsistent with Dr. Widlan's findings, and the ALJ did not err in finding that Dr. Widlan's opinions were less persuasive due to conflict with the treatment record.[7]

                5.     *Limited, Conservative Treatment*

Finally, Plaintiff disagrees with the ALJ that his treatment was limited and conservative. (Dkt. # 19 at 8.) Plaintiff's arguments in this regard have merit, because the ALJ did not explain why he found Plaintiff's treatment to be limited or conservative when considering Plaintiff's

---

[7] Again, this reasoning would have passed muster under cases applying the old regulations. *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

ORDER - 9

conditions. This error is harmless, however, because the ALJ provided other valid independent reasoning to explain why he found Dr. Widlan's opinions to be less persuasive.

For all of these reasons, the Court affirms the ALJ's assessment of Dr. Widlan's opinions.

## V.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED,** and this case is **DISMISSED** with prejudice.

Dated this 12th day of February, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 10